### UNITED STATES v. IRIARTE et al.

### IRIARTE et al. v. UNITED STATES.

#### Nos. 4285, 4286.

Circuit Court of Appeals, First Circuit.

March 11, 1948.

Jason D. Lee, Atty., Dept. of Justice, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., Philip F. Herrick, U. S. Atty., of San Juan, P. R., and Roger P. Marquis, of Washington, D. C., on the brief), for United States.

Celestino Iriarte, Jr., of San Juan, P. R., José A. Poventud, of Ponce, P. R., and F. Fernandez Cuyar, of San Juan, P. R., for Celestino Iriarte, Jr., and others.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

These are cross appeals from a judgment in a condemnation case entered by the District Court of the United States for Puerto Rico following our mandate to that court on previous cross appeals taken by the parties from a prior judgment of the court below in the case.

In our opinion on the former cross appeals[1] we considered these issues: (1) the statutory authority of the United States to take the land in question for the use disclosed in the declaration of taking; (2) the legal right of the landowners to have the amount of their compensation fixed by a jury; (3) whether on the record the court below could reasonably find that at the time of the taking the land involved did not have a fair market value of at least $200,000; and (4) whether the court below erred in fixing the amount of just compensation at $33,297. We then held that the United States had authority under the pertinent statutes to take the land involved for the military use to which it intended to put that land, i. e., "for use in connection with the establishment of a terminal and dock to serve the Puerto Rican General Depot", that the landowners were not entitled to trial by jury of the issue of the amount of their just compensation, and that on the record the court below could in reason fix just compensation at less than $200,000. This disposed of the landowners' appeal. But on the Government's cross appeal we held that the court below had fallen into error in determining the amount of the compensation it awarded. It seemed to us from reading that court's memorandum opinion that its determination of the fair market value of the land had been to some extent affected by the Government's general policy of dredging navigable waters without

---

[1] Reported 1 Cir., 157 F.2d 105.

expense to the riparian owners, when there was nothing in the record to indicate that there was a sufficiently immediate prospect of the Government dredging the harbor upon which the land in question fronted to have any effect whatever upon the value of the land. That is to say, we felt that the court below had considered that an element of value inhered in the land by reason of the Government's policy above mentioned. when there was no evidence to support the conclusion that the land, although riparian, would benefit from that policy in the forseeable future. · Hence we held that it was error for that court to have considered the Government's policy with respect to the improvement of navigable waters as having any bearing on the issue of the value of the land, and therefore we remanded the case to the court below for further consistent proceedings.

Upon remand the parties stipulated for submission of the case for re-trial on the previous record and briefs, plus a short memorandum of additional authorities, and they also stipulated, "in order to save the points in case of a second review herein", that the defendants, the landowners, might re-submit to the trial court for its consideration and decision the same questions they had raised before, that is, the question of the statutory authority for the taking, the question of their right to have a jury determine the amount of their just compensation, and whether on the record it could in reason be found that the fair market value of the land was not at least $200,000. So submitted, the court below, without making any mention of the points re-submitted by the landowners, re-opened the issue of just compensation and proceeded to revalue the land at $45,000, that being an increase of approximately $11,700 over the value ·it had previously determined, saying in its memorandum opinion:

"I have given a most careful consideration to the record in this case and have reached the conclusion that in my former decision I did not give proper weight to the testimony of Mr. Robert Prann as to a sale of property which he owned near the Iriarte property. I also failed to give proper consideration to the testimony of Mr. Canejas who testified that he had sold several lots located near the Iriarte property at about the time the condemnation proceeding in this case were instituted. He stated that he sold some lots of One Dollar per square meter and some others at One Dollar and a Half and Two Dollars. The Canejas property was and is used as an urban development. There can be no doubt that Iriarte property which adjoins the Canejas lots is as valuable for urban development as the Canejas property. Conceding and comparing the two properties, my conclusion is that the Iriarte property is as valuable as the lots sold by Canejas. I am also convinced that the Iriarte properties are not desirable· for residential purposes but are suited for the purpose of a dock or terminal site. I think the Iriarte properties are worth at least as much as the property sold by Mr. Prann at about the time of his condemnation. Mr. Prann states that he sold his property for $1250 per acre and this is not denied.

"I find now for the reasons indicated that the Iriarte property at the time of the filing of the declaration of taking had a market value of $45,000 and judgment in the amount will be entered."

The landowners' appeal from the present judgment entered according to this finding raises no question that we have not already considered. Since no new evidence has been offered or new authorities cited it will suffice for us to say that we see no reason to change or modify the views expressed in our former opinion.

· The Government's appeal cannot be disposed of so briefly.

It contends first that under our previous mandate the court below had no authority to increase the amount of its previous award of $33,297, but only had authority to decrease that award by eliminating therefrom the element of value which we held had been erroneously included therein, and second, that the court below erred in that it based its award of $45,000 for the land taken solely upon evidence of sales prices for wholly dissimilar properties. We do not think the judgment appealed from should be reversed on either of these grounds.

■ Obviously further proceedings in a trial court on remand are controlled and limited by the mandate of the appellate court. And a mandate reversing a trial court's judgment and remanding the case to that court for further proceedings not inconsistent with the appellate court's opinion operates to make that opinion a part of the mandate as completely as though set out therein at length (Buscaglia v. District Court of San Juan, 1 Cir., 145 F.2d 274, 281 and cases cited) and this requires that the mandate and the opinion must be construed together in their entirety with particular reference to the issues considered. Gonzalez v. Bowie, 1 Cir., 123 F.2d 387, 391. We therefore turn to our former opinion in this case.

In that opinion we did not in any way indicate or attempt to indicate the amount of the judgment which we thought the court below ought to enter for the condemnee, nor did we give that court any specific directions as to what its future procedure should be. We simply held that the court below had erred for the reason that it had based its award of compensation in part upon the Government's policy of free improvement of navigable rivers and harbors, when there was no evidence in the record to indicate that the prospect of governmental improvement of the waters upon which the condemnee's land fronted was immediate enough to have any influence upon the fair market value of the land, and then we reversed and remanded generally for further consistent proceedings.

■■ Having given no specific instructions as to what the further proceedings in the court below ought to be in order to conform to our opinion, the general rule applies that upon a reversal and remand for further consistent proceedings the case goes back to the trial court and there stands for a new determination of the issues presented as though they had not been determined before, pursuant, of course, to the principles of law enunciated in the appellate court's opinion which must be taken as the law of the case at the new trial. Roth v. Hyer, 5 Cir., 142 F.2d 227, 229; Commercial National Bank in Shreveport v. Parsons, 5 Cir., 144 F.2d 231, 242, and cases cited. This is

not to say that in cases like the present the trial court has no discretion whatever as to the scope of the new trial. For instance it may well be that the court below in the instant case could have limited the issue for trial anew to the question of the amount of its former judgment represented by the element of value we found to have been improperly included therein and thus have limited itself to a reduction of its former judgment. What we are saying is that in the absence of directions from us it was not error for the court below, in the exercise of its discretion, instead of so limiting itself, to have reopened the entire issue of the fair market value of the land taken as of the time of the taking and considered that issue as though it had never passed upon it before. See Ex parte French, 91 U.S. 423, 23 L.Ed. 249; Exchange Mutual Life Ins. Co. v. Warshaw–Wilkinson Co., 3 Cir., 185 F. 487, 488.

■ Since under the circumstances it was for the court below to determine the scope of the further proceedings in the case which in its judgment justice required, and since we find no abuse of discretion in its reopening the whole issue of just compensation, we turn to that court's memorandum opinion to determine whether it again fell into error in fixing the amount of its award to the condemnees.

The excerpt from the District Court's opinion quoted above indicates that it based its award of $45,000 for the land taken upon sales of certain other lands in the vicinity made by Prann and by Canejas at about the time of the taking. The government contends that neither the Prann nor the Canejas sales provide a rational basis for the award made. It says that the Prann sale could give no guide to the value of the condemnee's land because Prann's land was not waterfront property but was situated some 4,000 feet from the Iriarte land adjoining a refinery, that its most valuable use was for industrial development and so differed radically from the Iriarte land which on the evidence could only be found to be most valuable for either a housing development or for use as waterfront property, and furthermore, that although Prann received $1,250 per acre for the 19 odd acres he sold,

that sale was made ten months after the Iriarte land was condemned and taken and his price reflected the value added to his land by the Government's development of the Iriarte land which, it says, is clearly the 19 acres he sold at $1,250 per acre about indicated by the fact that Prann purchased a year and a half before the taking as a part of a larger tract of 33 acres for which he paid only $4,000 or about $121 per acre. The facts upon which the Government's contention rests being undisputed, we think it obvious that its contention with respect to the use of the Prann sale as a measure of the value of the Iriarte land is well taken.

■ But in spite of the erroneous use of the Prann sale as a basis for the award made, the judgment appealed from must be affirmed because it is apparent that the court below also and in equal degree based its determination of the value of the Iriarte land on sales by Canejas of lots near-by at from $1 to $2 per square meter, and we consider this alternative basis for the award adequate to support the conclusion that the land condemned had a fair market value of $45,000 at the time of the taking.

The Government concedes that the Canejas sales were made at about the time the instant condemnation proceeding was instituted. But it contends that it was obvious error to use these sales to measure the value of the land taken because it is clearly apparent from the opinion of the court below that the sales by Canejas were made for residential purposes, whereas it is equally apparent from that opinion that the Iriarte property was not desirable for that purpose but was most valuable for use as the site for a dock or waterfront terminal. We do not think the District Court's opinion must of necessity be so interpreted. It seems to us that reading that opinion as a whole the court below must have considered that both properties had approximately the same value for residential purposes but that the Iriarte property in addition had value for a dock or terminal site. So construed use of the Canejas sales does not harm the Government.

■ Nor is the Government's contention sound that lot sales cannot be used to indicate the value of undeveloped acreage.

See United States v. 3.544 Acres of Land, 3 Cir., 147 F.2d 596.

To be sure evidence of the sales price of lots may be misused in valuing acreage. Obviously it would have been patent error for the court below to have followed the landowners' suggestion and valued their land by simply multiplying the number of square meters in it by the average price per square meter at which Canejas sold his lots. That method of valuation leaves out of account the cost of subdivision and sale of lots, and also the allowance which would have to be made for the reduction in area available for sale by lots resulting from the necessity for laying out streets, etc. The question in cases of this sort is the value of the land before subdivision, not afterward, and certainly the price a promoter would pay for undeveloped land suitable for subdivision would be influenced by the price he would expect to get per lot after subdivision. But, of course, he would also take into account the expense of development—a factor which it is evident the court below had clearly in mind because in the course of the trial it said: "If you buy land in bulk—ten or twenty acres—for urban development the person who buys it has the increased expense of urbanization, laying it out into lots, putting in the various improvements, and consequently he just does not pay anything like the price he would if he were buying a single lot off the property."

And calculations made on the basis of data found in the record as to the cost of developing land in Puerto Rico for urbanization support the conclusion that a promoter, even if he was optimistic enough to assume that he could sell all his lots at Canejas' top price of $2 per square meter, would at the very most have paid not more than $45,000 for the Iriarte land for that purpose in 1941. From the opinion of the court below we think it fair to assume that it did not take the most optimistic possible view of the value of the Iriarte land for the purpose of subdivision, but instead set a value on the land for that purpose at less than the maximum possible, and then, because of the finding that the Iriarte land in addition to its value for urbanization had some value as a dock or terminal site, added

something to the value it had arrived at for urbanization purposes to make a final valuation of $45,000.

It being reasonable to suppose from the opinion of the court below that it used this method of calculation, and no error appearing therein and the final result thereof being within the range of the testimony as to value, it cannot be said that the conclusion of the court below was clearly erroneous.

The judgment of the District Court is affirmed.