In the Matter of the Complaint of BANK-
ERS TRUST COMPANY as Owner-
Trustee and Monsanto Company as
Chartered Owner, and Keystone Ship-
ping Co., as Chartered Owner and Op-
erator of the SS. EDGAR M. QUEENY,
For Exoneration From and Limitation
of Liability and Villaneuva Compania
Naviera, S.A., Amoco Overseas Oil
Company and Amoco Transport Com-
pany, Third-Party Plaintiffs,

v.

BETHLEHEM STEEL CORPORATION,
General Electric Company and the Wil-
liam Powell Company, Third-Party De-
fendants.

Appeal of BP OIL, INC. and Sohio
Petroleum Company.

Appeal of BANKERS TRUST COMPA-
NY, Monsanto Company and
Keystone Shipping Co.

Nos. 84–1051, 84–1052.

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1985.

Decided May 13, 1985.

944

James F. Young (argued), Thomas Fisher, III, Maurice J. Maley, Jr., Krusen, Evans & Byrne, Philadelphia, Pa., for appellants and cross-appellees, Bankers Trust Co., Monsanto Co. and Keystone Shipping Co.

Benjamin F. Stahl, Jr., Edward V. Cattell, Jr. (argued), Stuart M. Goldstein, W. Stanley Sneath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for appellees and cross-appellants, BP Oil, Inc. and Sohio Petroleum Co.

Before HUNTER, HIGGINBOTHAM, Circuit Judges, and DEBEVOISE, District Judge.*

_____

* Honorable Dickinson R. Debevoise, United States District Court for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge:

 Presently before this court is a consolidated appeal (No. 84–1052) and cross-appeal (No. 84–1051) in a protracted admiralty proceeding for limitation of or exoneration from liability pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 181–195 (1982), arising out of a disastrous vessel collision which occurred over ten years ago. The shipping interests and certain property damage claimants now seek review of a final order of the United States District Court for the Eastern District of Pennsylvania denying claimants' motion to vacate a prior order of the district court which, following a bifurcated trial on damages and entry of judgment in favor of the claimants, determined the rate and schedule for payment of pre- and post-judgment interest, set the value of the damaged vessel for purposes of establishing the amount of the limitation fund, and calculated the interest on the fund.[1]

Despite previous complicated appeals from both the liability and damages components of this bifurcated litigation,[2] this action is once more before us and again we face the troublesome task of reversing the district court and remanding this matter for further proceedings. Yet, we hasten to note that we reverse not because we find that the district court incorrectly decided the damages issues raised on this appeal

1. This is a case of admiralty and maritime jurisdiction and although the December 27, 1983 order appealed from is final insofar as it determines the rights and liabilities of the shipping interests and the property damage claimants, the appeal and cross-appeal are nevertheless interlocutory in nature because the rights and liabilities of *all* of the parties to this litigation have not been determined. Our determination that this is an interlocutory appeal warrants discussion because it impacts on certain theories raised by the property damage claimants. *See* Section III, B *infra*.

We have appellate jurisdiction to entertain this appeal and cross-appeal pursuant to 28 U.S.C. § 1292(a)(3) which provides for appellate review of "[i]nterlocutory decrees of ... district courts ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed ...." Section 1292(a)(3) does not require that all the rights and liabilities of all the parties be determined before the order is appealable. *O'Donnell v. Latham*, 525 F.2d 650 (5th Cir.1976). It applies to any order which finally determines the liability of *a* party even if the order leaves unresolved an issue which may ultimately preclude recovery by a particular plaintiff. *In re SS Tropic Breeze*, 456 F.2d 137 (1st Cir.1972). Our determination that this appeal is interlocutory in nature finds logical support in the lengthy record of this case.

Under maritime law, the shipowner in a limitation of liability case must file a *pro tanto* claim against the limitation fund if it seeks to obtain credit against the fund for settlement payments. From our review of the record, the shipping interests have yet to file a *pro tanto* claim. On June 1, 1978 the shipping interests moved for entry of an order directing that, with respect to funds advanced to settle injury, death, and prop-

erty damage claims arising out of the collision, they be *pro tanto* placed in the same position as to the limitation fund as the claimants whose claims were satisfied.

The docket entries indicate that on August 25, 1978, the district court granted the shipping interests' Motion for Entry of a *Pro Tanto* Order without prejudice to the right of *any other claimant* to dispute the right of any settlement as a charge on the limitation fund. Appendix ("App.") at 35a. Since the entry of that order, no *pro tanto* claim has been filed by the shipowners. The district court has yet to rule on the extent of the shipping interests' *pro tanto* claim to the limitation fund or the *pro rata* share of the fund to be paid to the claimants. Furthermore, at the same time that the district court denied the property damage claimants' Motion to Vacate the District Court's July 5, 1983 Order, it also denied claimants' outstanding Motion to Set Time Limits for Filing *Pro Tanto* Claims, with leave to the claimants to renew the motion at a later date. App. at 98a. This procedural history, coupled with the fact that a petition to vacate the settlement of a maritime death claim is still pending, *see Complaint of Bankers Trust Co. (Chatterjee)*, 752 F.2d 874 (3d Cir.1984), leads us to conclude that the order in issue is an interlocutory decree in admiralty within the ambit of 28 U.S.C. § 1292(a)(3).

2. See *Complaint of Bankers Trust Co.*, 651 F.2d 160 (3d Cir.1981) *cert. denied*, 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982) (appeal from denial of limitation of liability); *Complaint of Bankers Trust Co.*, 658 F.2d 103 (3d Cir.1981) *cert. denied*, 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982) (appeal from denial of prejudgment interest and rate of post-judgment interest award).

and cross-appeal [3] but because we find that the judgment in the limitation of liability action has been entered prematurely. On remand, following our reversal of its original denial of limitation of liability, the district court apparently misconstrued the scope of the mandate set forth in *Complaint of Bankers Trust Co.*, 651 F.2d 160 (3d Cir.1981), and thus failed to make specific factual findings on several unresolved liability issues which, in our view, have a direct bearing on the propriety of limitation in this case.

## I.

This limitation action, and hence these appeals, are the offshoots of the January 31, 1975 collision of the American chemical carrier S.S. EDGAR M. QUEENY ("QUEENY") and the Liberian steam tanker S.T. CORINTHOS ("CORINTHOS") on the Delaware River in Marcus Hook, Pennsylvania. The resulting explosion and fire contaminated the Delaware River, claimed 26 lives, damaged the QUEENY, destroyed the CORINTHOS, and caused numerous personal injuries and extensive property damage to the BP Oil, Inc. and Sohio Petroleum Company pier and refinery as well as to neighboring properties.[4]

The owners and operators of the QUEENY, appellants/cross-appellees Bankers Trust Company (owner/trustee), Monsanto Company (chartered owner) and Keystone Shipping Company (chartered owner/operator) (collectively referred to as "Keystone") filed a petition for exoneration from or limitation of liability, in accordance with the Limitation of Liability Act, 46 U.S.C. § 183(a).[5]

The issue of Keystone's right to limit liability was tried non-jury from July 18 through August 27, 1979. On February 19, 1980, the district court issued an opinion in the limitation action in which it held that Keystone was not entitled to limit liability. *Complaint of Bankers Trust Co.*, 503 F.Supp. 337 (E.D.Pa.1980). Keystone appealed. This court reversed on May 15, 1981 and remanded "for further proceedings consistent with this opinion". *Complaint of Bankers Trust Co.*, 651 F.2d 160, 173, 175 (3d Cir.1981). We are primarily concerned here with the district court's treatment of this action following our May 15, 1981 reversal and remand.[6]

The issue of the amount of damages to be awarded property damage claimants, appellees/cross-appellants BP Oil, Inc. (operator/lessee of the Marcus Hook facility) and Sohio Petroleum Company (owner/lessor of the Marcus Hook facility) (collectively referred to as "BP/Sohio"), had been bifurcated from the trial of the liability

3. See notes 12 and 13, *infra*.

4. A series of proceedings were instituted relating to this horrendous accident, including sixty cases and 112 personal injury, property damage and other actions. All of the personal injury and wrongful death cases have been settled and dismissed except for one (Chatterjee) and all of the property damage cases have been resolved except the case at bar. A products liability action, filed against the designers and manufacturers of the damaged QUEENY, has been severed and stayed, pending resolution of the limitation actions. The property damage claimants' suit against the owners and operators of the destroyed CORINTHOS has also been severed. Because this court is intimately familiar with the facts and the procedural posture of this matter we will recite only those aspects salient to the issues at hand. The events leading up to the collision itself are not in dispute and are detailed in *Complaint of Bankers Trust Co.*, 651 F.2d 160, 164–166 (3d Cir.1981).

5. Section 183(a), which applies to cases of personal injury and death as well as to cases of loss of or injury to property, provides in relevant part:

> The liability of the owner of any vessel ... for any ... loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners shall not, ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C. § 183(a).

Keystone no longer pursues exoneration but seeks only limitation of liability.

6. The district court docket entries reflect no further proceedings conducted in the limitation segment of this litigation. App. at 2a–99a.

issues and tried separately on April 21, 1980.

At the conclusion of the damages trial on July 18, 1980, the district court entered judgment in favor of BP/Sohio in the amount of $16,188,531.00 as per the stipulation of the parties.[7] However, the district court concluded that BP/Sohio was not entitled to pre-judgment interest. The court then applied the legal rate of interest in Pennsylvania to the post-judgment interest award. *Complaint of Bankers Trust Co.,* 503 F.Supp. 350, 353 (E.D.Pa.1980). BP/Sohio appealed. On August 13, 1980, then Chief Judge Seitz, speaking for this court, remanded for further proceedings specifically on the questions of when pre-judgment interest should begin to run on the individual items of damages and the appropriate award of post-judgment interest. *Matter of Bankers Trust Co.,* 658 F.2d 103, 112 (3d Cir.1981).

On remand, the district court issued a July 5, 1983 memorandum opinion and order in which it awarded pre-judgment interest to BP/Sohio and entered judgment in favor of BP/Sohio for post-judgment interest.[8] The district court also set a value for the QUEENY at the time of collision at $19.05 million dollars.[9] *Petition of Bankers Trust Co.,* 569 F.Supp. 386, 393 (E.D. Pa.1983).[10]

BP/Sohio subsequently moved to vacate the July 5th ruling. In an unpublished opinion and order dated December 27, 1983, the district court:

(1) denied BP/Sohio's motion to vacate the July 5th order, unpersuaded by BP/Sohio's insistence that a number of material issues impacting on the ultimate disposition of the case were still unresolved;

(2) denied BP/Sohio's outstanding November 15, 1982 Motion for Action Consistent with the Court of Appeals' Mandate on Remand on the ground that this court's May 15, 1981 reversal of the earlier denial of limitation in effect granted limitation, explicitly or implicitly, as to all issues raised; and

(3) denied BP/Sohio's pending Motion to Set Time Limits for Filing *Pro Tanto* Claims.[11] Appendix ("App") at 448a–451a.

Keystone appeals the district court's reaffirmation of its July 5th valuation determination.[12] BP/Sohio cross-appeals,

---

**7.** BP/Sohio and Keystone entered into a stipulation authorizing the district court to enter judgment in BP/Sohio's favor. The parties concluded that the total of BP/Sohio's provable damages was $16,188,531.00, but the stipulation did not address the issues of pre-judgment interest, the interest rate as to either pre-judgment or post-judgment interest, or the award of costs. *Complaint of Bankers Trust Co.,* 503 F.Supp. 350, 352 (E.D.Pa.1980).

**8.** Pre-judgment interest was awarded in the amount of $8,606,556.00. Post-judgment interest was awarded at a rate of 10% on $24,795,087, judgment plus pre-judgment interest.

**9.** During the 1979 limitation of liability trial, evidence was presented regarding the valuation of the QUEENY. App. at 100a–199a. The district court denied Keystone's right to limitation, therefore the question of valuation was not decided. *Petition of Bankers Trust Co.,* 569 F.Supp. 386, 390 (E.D.Pa.1980); 503 F.Supp. 337. On remand, the district court granted BP/Sohio's Motion to Reopen the Record and Compel Additional Discovery on the issue of the QUEENY's valuation and conducted an evidentiary hearing on December 13, 1982.

**10.** The district court found the limitation fund to be $18,013,697 by first reducing the sum of $19,050,000 by $1,305,804, the amount of repairs, and then by adding to the figure of $17,744,196 the pending freight of $269,501. 569 F.Supp. at 393.

**11.** See note 1, *supra.*

**12.** On this appeal, Keystone avers: (a) the district court erred in disregarding the evidence presented at the 1979 trial on the theory that it comprised the only evidence of the market value of the QUEENY as reflected by contemporaneous sales; (b) the district court abused its discretion in reopening the record in December 1982 to admit evidence; (c) the district court erred in finding a value of the QUEENY premised on an averaging of the highest and lowest values presented by the evidence; and (d) the district court erred in finding a value which contradicts testimony that said value would render the vessel worthless.

We do not reach the merits of these allegations pertaining to the assessment of damages in view of our holding that the district court entered judgment prematurely and has yet to rule on

again asserting, *inter alia,* that the district court deviated from our mandate by failing to rule on outstanding limitation issues on remand. In reviewing the action of the district court, we address only the latter assignment of error.[13]

Our analysis of whether the district court proceeded in accordance with our mandate must necessarily begin with a review of the district court's disposition of the liability phase of this matter in its February 1980 decision, an examination of our May 1981 decision on appeal, and clarification of the scope of our mandate. We will then proceed to briefly consider *seriatim* the issues which BP/Sohio maintains have been left undecided.

## II.

The gravamen of the instant dispute concerns the scope and execution of our mandate and turns on an evaluation of certain factual findings made by the court below as they relate to the underlying limitation issues of negligence and unseaworthiness. Thus, the only point in issue is whether this court's May 1981 reversal of the district court's denial of limitation of liability operated to conclusively grant limitation as to all questions in issue below.

A. *Disposition At Trial and On Appeal*

■ The operative statute provides that a shipowner's liability shall be limited to the "value of the interest of the vessel and her freight" for any act which occurs "without the privity or knowledge" of the owner. 46 U.S.C. § 183(a). The right to seek exoneration from or limitation of liability in accordance with 46 U.S.C. § 183 places upon the shipowner the affirmative duty to establish that the damage caused by the vessel was occasioned without the shipowner's privity or knowledge.[14]

In analyzing the evidence adduced at the 1979 limitation proceeding to determine whether the shipping interests satisfied the statutory requisites, the district court engaged in a two-part inquiry: (1) what acts of negligence or conditions of unseaworthiness caused the accident; and (2) did the shipowner have knowledge or privity of those same acts of negligence or conditions of unseaworthiness. *Complaint of Bankers Trust Co.,* 503 F.Supp. at 342.

BP/Sohio alleged three acts of negligence and/or conditions of unseaworthiness which contributed to the accident:

(1) The failure of Shoreside Management to use due diligence to discover and remedy the damage to the astern turbine which reduced the QUEENY's astern power by 40% and rendered her unseaworthy;

(2) The commitment by management of discretion to the master to disregard company instructions requiring an anchor watch while maneuvering in congested waters which precluded the dropping of the anchors, which could have prevented the collision; and

certain liability issues on which evidence was presented at the limitation trial.

**13.** For the reasons expressed in note 12, *supra,* we do not reach the merits of BP/Sohio's point of contention that, as to damages, the district court improperly applied inadequate interest on the limitation fund.

**14.** A limitation action against a shipowner differs from an ordinary lawsuit against a shipowner in two respects. "First, it introduces the issue of limitation of liability, a special form of relief or affirmative defense asserted by the shipowner. Second, the proceeding is initiated by the shipowner rather than the claimant actually seeking recovery." Staring, Limitation Practice and Procedure, 53 Tulane L.R. 1134, 1173 (1979).

The burden of proof in an action seeking exoneration from or limitation of liability is divided. The claimant must prove that the destruction or loss was proximately caused by negligence on the vessel. Once negligence has been shown to be the cause, the burden then shifts to the shipowner to demonstrate that he comes within the statutory exemption because there was neither design, neglect, privity, nor knowledge on his part. *Coryell v. Phipps,* 317 U.S. 406, 409, 63 S.Ct. 291, 292, 87 L.Ed. 363 (1943); *Farrell Lines, Inc. v. Jones,* 530 F.2d 7 (5th Cir.1976); *Waterman S.S. Corp. v. Gay Cottons,* 414 F.2d 724 (9th Cir.1969). *In re G.b.R.M.S. Caldas,* 350 F.Supp. 566 (E.D.Pa.1972) *aff'd* 485 F.2d 679 (3rd Cir.1973). Thus, on the issue of liability, the property damage claimants have the burden of proof while on the issue of limitation, the shipping interests have the burden of proof.

(3) The continued pressure of Monsanto and Keystone to cut costs, which resulted in the failure to use the bridge control and premature relief of the bow detail without posting an anchor detail.

*Complaint of Bankers Trust Co.,* 503 F.Supp. at 342.

Mindful that "[t]he claimants in this case ... have argued and presented voluminous testimony and exhibits to the effect that other acts and/or conditions of which the QUEENY interests had knowledge or were privy to contributed to the accident", *id.,* the district court went on to hold:

> Because we have determined that the astern guardian valve and the astern turbine were defective at the time of the collision, *we shall not make a finding regarding the claimants other alleged causes of the collision.*

*Id.* at 345 (emphasis added). The district court did make a finding that the collision was attributable primarily to the pilot's and the captain's negligence in executing a 180° turn, but that the collision was also caused in part by the failure of the shipping interests to correct a defective astern guardian valve and turbine. It found that this defective condition rendered the QUEENY unseaworthy.

The district court further determined that Keystone was not entitled to limit liability because Keystone had the requisite privity and knowledge of a contributing cause of the collision: loss of astern power due to astern turbine damage attributable to a defective astern valve.

We so interpreted the lower court's findings on appeal:

> The district court found that *the QUEENY'S astern guardian valve and astern turbine were defective* on the night of the accident and that *these defective conditions were a contributing cause of the tragic collision.* It ruled that Keystone should have known of this defective condition and held them in privity. Hence, it denied Keystone's petition for limitation of liability.

*Complaint of Bankers Trust Co.,* 651 F.2d at 167 (emphasis added). In reversing, we held: *"the separate and distinct events relied on by the trial court* are, as a matter of law, not significant enough to support a ruling that Keystone had knowledge or privity of either the acts of negligence on board the QUEENY, or her purported unseaworthiness." *Id.* at 173 (emphasis added). We simply reiterated in a footnote, with no elaboration, the other contributing causes asserted by BP/Sohio in the lower court. *Id.* at 169 n. 11. In our mandate, we directed that the case be remanded "to the trial court for further proceedings consistent with this opinion." *Id.* at 175.

### B. *The Scope of the Mandate*

 After careful reflection we are not satisfied that the district court acted in accordance with the mandate which issued from our May 15, 1981 decision.

It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. *Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948); *Seese v. Volkswagenwerk, A.G.,* 679 F.2d 336, 337 (3d Cir.1982); *Noel v. United Aircraft Corp.,* 359 F.2d 671, 674 (3d Cir.1966); *Matter of Beverly Hills Bancorp,* 752 F.2d 1334, 1337 (9th Cir. 1984); *Stevens v. F/V Bonnie Doon,* 731 F.2d 1433, 1435 (9th Cir.1984).

A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. *Piambino v. Bailey,* 757 F.2d 1112 (11th Cir.1985). *See also Colville Confederated Tribes v. Walton,* 752 F.2d 397, 400 (9th Cir.1985); *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 n. 2 (11th Cir.1984).

"Where the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length." *Noel,* 359

F.2d at 674. In the absence of specific directions, the question as to what further proceedings can be had consistent with the opinion of the appellate court must be determined from the nature of the case and the pertinent statutory provisions. The mandate and the opinion must be considered together in their entirety with particular reference to the issues considered. *United States v. Iriarte,* 166 F.2d 800, 803 (1st Cir.1948), *cert. denied,* 335 U.S. 816, 69 S.Ct. 36, 93 L.Ed. 371 (1948). From the proposition that a trial court must adhere to the decision and mandate of an appellate court there follows the long-settled corollary that upon remand, it may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision. *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139 1148 n. 18, 59 L.Ed. 358 (1979); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939); *United States ex rel. Johnson,* 531 F.2d 169, 172 (3d Cir.1976); *Piambino,* 757 F.2d at 1120; *Stevens,* 731 F.2d at 1435; *Beltran v. Myers,* 701 F.2d 91, 93 (9th Cir. 1983) *cert. denied sub. nom. Rank v. Beltran,* 462 U.S. 1134, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983); *United States v. Cirami,* 563 F.2d 26, 33 (2d Cir.1977) on remand 92 F.R.D. 483. A trial court is thereby free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.

Although we gave no specific instructions as to the nature of "the further proceedings" to be conducted by the trial court in order to conform to our opinion, the general rule applied: upon a reversal and remand for further consistent proceedings, the case goes back to the trial court and there stands for a new determination of the issues presented as though they had not been determined before, pursuant to the

principles of law enunciated in the appellate opinion, which must be taken as the law of the case. *Iriarte,* 166 F.2d at 803.

The district court in the instant case consulted our opinion in order to ascertain the scope of our mandate and concluded:

[T]he Court of Appeals has already spoken and determined that the petition of limitation of liability to the QUEENY interests should be granted.

App. at 450a. In arriving at this conclusion, the district court relied upon our above-quoted statement that "the separate and distinct events relied on by the trial court are ... not significant enough to support a ruling [of] knowledge or privity ...." *Complaint of Bankers Trust Co.,* 651 F.2d at 173. We believe, however, that the district court did not construe this language in light of the opinion in its entirety. Consequently, it acted inconsistently with the letter and spirit of our mandate.

Inasmuch as the traditional function of an appellate court is merely to apply the law to the findings of fact made below, we reviewed only those factual findings specifically made by the district court—namely, that the defective astern guardian valve and the defective astern turbine contributed to the collision. We indicated that "[t]o hold Keystone privy ... the evidence must show that some individual at the management level of Keystone had, or should have had, knowledge of *the QUEENY's damaged astern guardian value." Complaint of Bankers Trust Co.,* 651 F.2d at 169 (emphasis added). We did not consider, explicitly or otherwise, the other alleged causes raised at trial by BP/Sohio because the district court had expressly declined to make findings on those issues.

Therefore, our determination that certain events relating to those defects [15] were not, either individually or in combination significant enough to place the vessel owner on notice of negligence or unseaworthiness,

---

**15.** The district court based its original conclusion of privity and knowledge of the defective condition on problems with a sticking guardian astern valve on the QUEENY's maiden voyage, the failure to examine the RPM logger tapes

which monitor the revolutions per minute of the engine, problems with debris in the steamline of the sister vessel, and the captain's indication that he felt a crash astern test would damage the propulsion system. 651 F.2d at 169–173.

does not *ipso facto* mean that the *other contributing causes* alleged by BP/Sohio, but undecided below or on appeal, were equally insufficient, as a matter of law, to preclude limitation of liability. Simply stated, we reversed the district court's denial of the petition for limitation of liability because the evidence was insufficient to sustain a finding of privity or knowledge of the deficient astern guardian valve. Therefore, our May 1980 reversal of the district court's denial of liability did not conclusively grant limitation as to all questions raised below. We thus conclude that BP/Sohio is correct in its charge that the district court acted inconsistently with our mandate by failing to rule on material issues of privity and knowledge.

### III.

As framed by BP/Sohio, the unresolved privity and knowledge issues are:

1. The commitment by management of discretion to the master to disregard any accompanying instructions requiring an anchor watch while maneuvering in congested waters, precluding the dropping of the anchors which would have prevented the collision.

2. The failure of Monsanto and Bankers Trust to affirmatively establish that the damage caused by their vessel was occasioned without their privity and knowledge.

3. Whether the privity and knowledge of the master, in prematurely releasing the tug and anchor detail, should eliminate from the limitation fund the QUEENY interests *pro tanto* credit for payments made to the personal injury and death claimants.

We accept BP/Sohio's proposition as to the first and the third issues and will therefore address those initially. We are not, however, persuaded by the contention that our mandate encompassed the second issue.

### A. *The Anchor Watch Theory*

██ BP/Sohio urged at the 1979 limitation of liability trial and again on the Motion for Action that Keystone should not be entitled to limit its liability because it allegedly failed to have an anchor watch. According to BP/Sohio, the QUEENY's master chose to ignore the QUEENY management's explicit instructions to post an anchor detail in congested waters and that the failure to post an anchor watch was a contributing cause of the collision.[16] It is Keystone's position that the posting of anchor watch and the use and control of tugs are activities traditionally entrusted to the discretion of the ship's master. Therefore, even if negligence was proved, it is outside the privity and knowledge of the vessel

---

16. BP/Sohio argues that the failure to have such anchor watch standing by, ready to drop anchor, in waters well frequented by vessel traffic, is a violation of 33 U.S.C. § 221 (1982), which invokes the "PENNSYLVANIA Rule." *THE PENNSYLVANIA*, 86 U.S. 125, 22 L.Ed. 148 (1873). This rule places the burden on the shipowner to prove that the failure to have an adequate anchor watch could not have contributed to the casualty. Motion of BP/Sohio for Action Consistent with the Court of Appeals' Mandate on Remand at 5–12.

In opposing the Motion for Action, Keystone contested the applicability of *THE PENNSYLVANIA* Rule on the premise that the only time that the failure to post an anchor detail would rise to the level of a statutory fault invoking *THE PENNSYLVANIA* Rule would be under circumstances where a local rule of navigation specifically required the posting of an anchor watch. In the absence of such a local rule, which Keystone asserts is the situation in the case at hand, the district court is at liberty to consider the circumstances and determine on its own whether or not the failure to post an anchor watch was a fault; and if so, whether or not the fault was causally related to the collision. Keystone claims that BP/Sohio did not prove fault and causation. Opposition of Bankers Trust Company, et al to the Motion of BP/Sohio for Action Consistent with the Court of Appeals Mandate on Remand Exhibit at 44–47.

We leave it to the district court to re-examine the tug and anchor detail evidence in the original trial record in order to resolve the following issues on remand: (1) whether an anchor watch was posted; (2) if not, whether a local rule of navigation specifically required the posting of an anchor watch; (3) if so, whether the shipping interests proved that the failure to have an adequate anchor watch could not have contributed to the casualty. If there is no governing local rule, the court should consider (1) whether the failure to post an anchor watch was a fault and (2) if so, whether the fault was causally related to the collision.

owner. According to Keystone, the lower court was correct in assuming that this "weaker ground" for finding privity was *implicitly* overruled by our holding that the management of Keystone lacked privity and knowledge of the defective astern guardian valve and turbine. We disagree.

> As we established on the prior appeal, corporate shipowners are held liable for the acts or knowledge of *managing officers or supervisory employees* ... Usually, however, they will not be held liable for the actions of crew members in the navigation or operation of the ship at sea.

*Complaint of Bankers Trust Co.*, 651 F.2d at 169 (emphasis added); (citations omitted). Thus, in the typical situation of a corporate-owned ocean vessel, privity and knowledge scrutiny focuses on whether the shore-based high-level management was aware or should have been aware of the likelihood of the occurrence before the ship's departure. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir.1977); *Waterman Steamship Corporation v. Gay Cottons*, 414 F.2d 724, 728–735 (9th Cir.1969). According to BP/Sohio, the QUEENY *management* knew or should have known of the master's regular and consistent practice of dismissing the bow detail/anchor watch as soon as he left the pier, leaving only a bow lookout who was, alone, unable to drop anchor.

Although the district court acknowledged this argument below, it made no findings of fact on this issue.[17] Moreover, this court also paraphrased the argument without further comment:

> In the lower court, BP/Sohio argued that there were numerous contributing causes to the collision:
>
> \* \* \* \* \* \*
>
> (2) *Keystone's decision to give the captain the discretion* to ignore company

---

17. The district court stated:

BP Oil, Inc. and Sohio Petroleum Co. contend that contributing causes of the collision were:

\* \* \* \* \*

(2) The commitment *by management* of discretion to the master to disregard company instructions requiring an anchor watch while

instructions to require an anchor watch to manuever in congested waters—a decision that made it impossible to drop the anchors (which might have prevented the collision).

651 F.2d at 169 n. 11. (emphasis added).

Because no findings of fact were made by the district court with respect to the issue presented, we are of the opinion that it was not implicitly within the purview of our mandate, and intimate no view as to the merit of BP/Sohio's arguments, or lack thereof, at this time. We simply could not overrule that which was not determined below.

### B. *The Privity and Knowledge of the Master*

BP/Sohio further claims that another point which has never been addressed by the district court is whether the privity and knowledge of the master of the QUEENY, in prematurely dismissing the tug and the anchor watch, can be imputed to Keystone with respect to the death and personal injury claimants under 46 U.S.C. § 183(e). 46 U.S.C. § 183(e) provides that the master's knowledge regarding the unseaworthiness of his vessel, at the beginning of the voyage, is imputed to the owner for the purposes of establishing privity and knowledge as to death and injury claimants.

In reversing the lower court, we overturned the denial of Keystone's limitation as to the *property damage* claimants on the basis that the QUEENY management did not have the requisite privity and knowledge of the astern machinery defects. BP/Sohio contends that the privity and knowledge of the master with respect to the tug and anchor watch should eliminate Keystone's *pro tanto* credit for settlement payments to *personal injury and death*

maneuvering in congested waters which precluded the dropping of the anchors, which could have prevented the collision

. . . . . .

\* \* \* \* \* \*

503 F.Supp. at 342. (emphasis added)

claimants.[18] If limitation is granted as against the property damage claimants on the anchor watch theory, we believe that the question of limitation under 46 U.S.C. § 183(e), relating to personal injury and death claimants, becomes a relevant issue which the district court should also address.

### C. The Grant of Limitation of Liability to Monsanto and Bankers Trust

BP/Sohio also presents the theory that Monsanto and Bankers Trust are not entitled to limitation of liability because of the failure of each to establish a lack of privity and knowledge of the defective astern guardian valve. As to Monsanto and Bankers Trust's alleged failure to establish lack of privity and knowledge, BP/Sohio contends that a review of the trial transcript and proofs offered by each named petitioner, reveals that only Keystone affirmatively put forth any proof to support their claim of limitation. BP/Sohio would therefore have us hold, as a matter of law, that Monsanto and Bankers Trust are not entitled to limit their liability and thus are liable for all of BP/Sohio's provable damages. We decline to do so because we have already decided this issue.

Throughout this litigation, Bankers Trust, Monsanto, and Keystone have been treated as a single party with identical interests. In our amendment of our July 24, 1981 order, we clarified that our reversal of the district court was not directed solely to Keystone Company, but that our holding of lack of privity or knowledge with respect to the defective astern guardian valve and turbine applied to all three petitioners.[19] We also believe that this collective treatment should continue on remand for the sake of consistency. Therefore, any findings to be made by the district court on remand of the unresolved issues of the alleged failure to post an anchor watch and the alleged privity and knowledge of the master in dismissing the tug and anchor watch should take this into account.

### IV.

For the aforestated reasons, the judgment of the court below will be reversed and this case remanded to the district court with instructions to address the two issues in question, make specific findings of fact, and apply to those facts the law of the case as determined on appeal.

---

**18.** BP/Sohio also asserts that this issue need not be reached if this court deems the district court's order of December 28, 1983 final.

As discussed in note 1, *supra*, on July 18, 1979, the district court entered a *pro tanto* order which provided, *inter alia*, that Keystone be permitted a *pro tanto* credit against the limitation fund for any and all claims arising from the collision, for which Keystone had obtained a reasonable settlement. To reiterate, the district court denied BP/Sohio's Motion to Set Definite Time Limits on the Presentation of *Pro Tanto* claims on the theory that BP/Sohio will not be prejudiced by their presentment at a later date. App. at 450a. We consider the order to be interlocutory in that the court deferred decision on the exact amount of the *pro tanto* credit. Therefore, we agree with Keystone's contention that it retains the right to claim a *pro tanto* credit against the limitation fund for the claims which it has compromised.

**19.** In an order amending opinion, we stated that we "used the term Keystone in a collective sense." The amended judgment of this court which was issued in lieu of a mandate on February 26, 1982 states in pertinent part:

... it is now here ordered and adjudged by this court that the judgment of the said district court, entered February 20, 1980, be, and the same is hereby reversed with respect to its denial of the petition for limitation of liability to Bankers Trust Company, Monsanto Company and Keystone Shipping Company ... and the cause remanded for further proceedings ...