**Lawrence C. MOORE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16664.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 26, 1962.

Decided April 26, 1962.

Mr. Lawrence C. Moore, Washington, D. C., appellant pro se.

Mr. John W. Boult, of the bar of the Supreme Court of Tennessee, pro hac vice, by special leave of court, with whom Asst. Atty. Gen. William H. Orrick, Jr., Messrs. David C. Acheson, U. S. Atty., and John G. Laughlin, Jr., Attorney, Department of Justice, were on the brief, for appellee. Messrs. Morton Hollander and James C. Cawood, Jr., Attorneys, Department of Justice, also entered appearances for appellee.

Before FAHY, WASHINGTON and BURGER, Circuit Judges.

FAHY, Circuit Judge.

The United States filed in the District Court a libel in rem against a vessel named The Tomalina and against its owner in personam, to collect statutory penalties alleged to be due in the total amount of some $2,400.[1] Appellant was the holder of a duly recorded preferred ship mortgage against the vessel. The balance of the principal he stated to be due was $756.54. He was permitted to intervene in the suit, claiming a preferred and prior lien by virtue of the mortgage and the balance due thereunder. Pursuant to authority of the District Court the United States Marshal arrested the vessel, which at all material times was on the waters within the District of Columbia. Substantial custodial costs, said to exceed $7,000, were thereafter incurred.

On the basis of a showing by the United States that the vessel was deteriorating and that continual custodial care was necessary she was sold by the Marshal at public auction pursuant to court order. This was done over appellant's opposition. The sale price was $350, the highest and best bid. On August 8, 1961, again over appellant's opposition, the court confirmed the sale, and the $350 have been deposited in the registry of the District Court pending final disposition of the litigation.

█ 1. This appeal by the mortgagee was taken September 5, 1961, twenty-eight days after the date of the order confirming the sale. The United States moved in this court for dismissal of the appeal as untimely, contending that the order confirming the sale was interlocutory and, therefore, an appeal therefrom was required by statute to be filed within fifteen days.[2] For the reasons now to be stated we think the order confirming the sale was not interlocutory and that the appeal, therefore, was timely.[3]

Before the sale was confirmed appellant requested the court to require the purchaser to give a new mortgage to secure the amount unpaid on the mortgage note. Appellant relied upon section 961(c) of the Ship Mortgage Act, which reads in pertinent part:

"Upon the sale of any vessel * * covered by a preferred mortgage, by order of a district court of the United States in any suit in rem in admiralty for the enforcement of a maritime lien other than a preferred maritime lien, the vessel shall be sold free from all preexisting claims thereon; but the court shall, upon the request of the mortgagee * * require the purchaser * * * to give * * * a new mortgage of the vessel for the balance of the term of the original mortgage."[4]

The request was refused and, as we have said, the sale was confirmed. The consequence is that title to the vessel passed to the purchaser free of appellant's mortgage. The result was a final

---

[1]. The penalties were claimed as due because (1) the vessel was operated without the prescribed certificate of inspection, (2) adequate life preservers were not provided, (3) the owner did not possess the required license, and (4) the vessel was being operated with improper and inadequate fire extinguishers. See 46 U.S.C. §§ 390c, 526e–526g (1958), 46 U.S.C.A. §§ 390c, 526e–526g, and 46 U.S.C. §§ 390d, 526o (1958), 46 U.S.C.A. §§ 390d, 526o.

[2]. In addition to appealing from the order confirming the sale appellant included in his notice of appeal the order of July 26, 1961, for the sale, and the order of August 7, 1961, denying his motion for rehearing and stay of sale. In view of our disposition of the appeal we do not pass separately upon the appealability of these orders, all questions necessary to disposition of the case being included in our consideration of the order confirming the sale.

[3]. 28 U.S.C. § 2107 (1958), provides in pertinent part:
"* * * In any action, suit or proceeding in admiralty, the notice of appeal shall be filed within ninety days after the entry of the order, judgment or decree appealed from, if it is a final decision, and within fifteen days after its entry if it is an interlocutory decree. * * *"

[4]. 41 Stat. 1005 (1920), 46 U.S.C. § 961(c) (1958), 46 U.S.C.A. § 961(c).

denial of the relief sought by appellant, namely, a new mortgage to which he claimed to be entitled under the provisions of section 961(c). The finality of this consequence of the order confirming the sale is not obviated by the possibility that appellant has a right to enter into a contest over how the $350 are to be distributed. This is not a substitute for a new mortgage of the vessel executed by its purchaser. Appellant's claim to such a mortgage has been finally decided against him, subject of course to his appeal. Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 688–89, 70 S.Ct. 861, 94 L.Ed. 1206; Great Lakes Towing Co. v. St. Joseph-Chicago S.S. Co., 253 F. 635 (7th Cir. 1918), cert. denied, 248 U.S. 578, 579, 39 S.Ct. 20, 63 L. Ed. 430; 4 Benedict, Admiralty 18 (6th ed. 1940).[5] Even if we were to assume that appellant might receive a share of the $350, or even all of it, this would not affect the finality of the District Court's action in denying to appellant his independent and separable claim to a new mortgage for the unpaid amount due under his preferred mortgage. We accordingly deny the motion to dismiss.

2. On the merits, however, we are unable to agree with appellant that he should have the mortgage. He relies in part upon section 961(b) of the Ship Mortgage Act.[6] This provision preserves the interest of a mortgagee when the vessel is "forfeited" to the United States, unless the mortgagee authorized, consented to, or conspired to effect the illegal conduct which constituted the violation resulting in the forfeiture. But this provision is not applicable to the present case, for there was no forfeiture of the vessel. There was a judicial sale, in the circumstances we have outlined, under Admiralty Rules 11 and 12, which provide for the sale of arrested property pending suit if such property is, *inter alia*, subject to deterioration and the claimant neglects to post security or tender a deposit to secure the release of the vessel.[7] This was not a vesting in the United States of the right to the property by operation of law, as occurs in case of forfeiture. The latter event is described as follows in The Sterling (Picou v. United States), 65 F. 2d 439 (5th Cir. 1933):

> "The doing of the forbidden act itself effects it [the forfeiture]. Under such a statute, neither seizure nor adjudication effects the forfeiture. They merely operate to devote the forfeited thing to the uses of the government, which, as the result of the forbidden act, has become the owner of it."

65 F.2d at 440. See, also, The Kathryn, 50 F.2d 193, 194 (E.D.N.Y.1931). Since there was no forfeiture, section 961(b) did not cause the mortgagee's interest to survive the judicial sale.

Appellant also relies upon section 961 (c), which, as we have seen in our discussion of the motion to dismiss, provides that upon the sale of a vessel covered by a preferred mortgage by order of a district court in any suit in rem in admiralty for enforcement of a maritime lien "other than a preferred maritime lien," the court shall,

> "upon the request of the mortgagee * * * require the purchaser * * * to give * * * a new mortgage of the vessel for the balance of the term of the original mortgage."[8]

The section provides further that, in the above event,

> "the mortgagee shall not be paid from the proceeds of the sale and the amount payable as the purchase price shall be held diminished in the

---

5. Neither in its motion to dismiss, filed in this court October 18, 1961, nor in its brief filed January 31, 1962, wherein the motion is pressed, does the United States present any authority to support its contention that the order confirming the sale was interlocutory.

6. 41 Stat. 1005 (1920), 46 U.S.C. § 961 (b) (1958), 46 U.S.C.A. § 961(b).

7. 28 U.S.C.App. at 5224 (1958).

8. 41 Stat. 1005 (1920), 46 U.S.C. § 961(c) (1958), 46 U.S.C.A. § 961(c).

amount of the new mortgage indebtedness."[9]

The sale in this case was of a vessel covered by a preferred mortgage. Moreover, we doubt that it was a sale for enforcement of a preferred maritime lien as that term is defined in the statute.[10] It would seem therefore, that, according to the terms of section 961(c), appellant was entitled to have his request for a new mortgage honored in the amount of the unpaid balance due under his preferred mortgage. We do not so conclude, however, because we must view the situation in light of the principles set forth in New York Dock Co. v. Steamship Poznan, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955. Under those principles the custodial costs incurred, in supervising and maintaining the vessel under the authority of the court after her arrest, have priority over the preferred ship mortgage. The Court there said in part:

> "The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.' * *
>
> "Such preferential payments are mere incidents to the judicial administration of a fund."

274 U.S. at 121, 47 S.Ct. at 484.

If we interpret "vessel" for "fund" in the above language, as we think we must in applying the reasoning of the decision, the custodial charges in our case have priority over appellant's preferred mortgage. Cf. The Herbert L. Rawding, 55 F.Supp. 156, 160–61 (E.D. S.C.1944). For this reason the relief sought by appellant by way of a new mortgage was properly denied. He does not seek a new mortgage subordinate to the custodial charges. Where, as here, the custodial charges far exceed both the purchase price of the vessel and the amount of the existing mortgage, to award appellant a new mortgage would be to grant him a preferred status not authorized by law or required in the interest of fairness.

The inability of the courts to reach a legal solution more favorable to appellant is in the end due to the inadequacy of the vessel to make good the security the mortgage was thought to give.

Affirmed.

---

9. Ibid.

10. Section 953(a) defines such a lien as follows:

"(1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter; or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage."

41 Stat. 1004 (1920), 46 U.S.C. § 953(a) (1958), 46 U.S.C.A. § 953(a).