815 F.2d 918
 1987 A.M.C. 1521
 In the Matter of KINGSTATE OIL
v.
M/V GREEN STAR. (Two Cases)
DREW AMEROID INTERNATIONAL CORP.
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
B.P. OIL INTERNATIONAL LIMITED
v.
KUK-JE SHIPPING CO., LTD. (Two Cases)
ATLANTIC STEAMERS SUPPLY CO. (N.J.) INCORPORATED
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem
and Kukje Shipping Company Limited, in Personam. (Two Cases)
McALLISTER BROTHERS, INC.,
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
OVERSEAS SHIPPING, INC.,
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
M.J. RUDOLPH CORP.
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
KINGSTATE OIL and Bank of Pusan, Plaintiffs in Intervention,
v.
KUK JE SHIPPING COMPANY LIMITED, In Personam, and M/V GREEN
STAR, In Rem, Defendants in Intervention. (Two Cases)
WITTE CHASE CORPORATION
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
KINGSTATE OIL, Jung Jin Park, Young Ho Kim, Bag Myeong In,
Bong Hun Jeong, Nam Sung Hyun, Gyo Seob Gim, I Seung Dae,
Park Hong Min, Hong Samyoung, Gu Yeong Hund, Byum Sung Duk,
Kim Jung Kei, Kim Tae Ok, Kim Haeng Sam, Kim Jung Bok, Kang
Mai Mook, Lee Gab Yeol, Lee Kim Mun, Jung Gweon Park, Jeon
Dae Yun, Byen Tto Sik, Jeon Su Saeng, Lee Hyeong Jo and Kim
Su Han, Plaintiffs in Intervention,
v.
M/V GREEN STAR, her engines, boilers, tackle, appurtenances,
cargo, etc., In Rem, and Kukje Shipping Company
Ltd., In Personam. (Two Cases)
DREW AMEROID INTERNATIONAL CORP. and Eklof Marine Corp.,
Intervening Plaintiffs,
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
DREW AMEROID INTERNATIONAL CORP. and Korean Development
Bank, Intervening Plaintiffs,
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
KINGSTATE OIL and Nissho Iwai American Corp., Plaintiffs in
Intervention,
v.
KUKJE SHIPPING COMPANY LIMITED, In Personam, and M/V GREEN
STAR, In Rem. (Two Cases)
KINGSTATE OIL, Kim Hyun Jin, Kim Su Hwan, Nam Gungggyu, Kim
Tae Gyu, Kim Byeong Ho, Mun Jeong Sook, Han Bong Chil, Seo
Jae Gwan, Chang Ki Chang, Lee Chun Kil, Kang Byeong Jun,
Bark Jong Cheol, Kim Sang Yul, O Yong-Hwan, Lee Hong Sik,
Lee Myeong Deuk, Deo Imgyo, Park Yong Sun, Kim Sang Hwan,
Kim Uk Kon, Chae Pil Kwen, Choi Yong Hwa, Jung Yong Gwan,
Choi Hae Weon, Chun Jin Sik, Cha Yong Jin, Jo Yong Su, Chow
Sung Yong, Kim Weon Joon, Chung Chung Hak, Lee Sei Hyang,
Kim Chang Sea, Lee Nam Yong, Lee Bong Il, Lee Mun Yong, Jin
Jae Chul, Kim Sung Hong, Ko Yong Bo, Lee Jae Gu, Kim Dae
Jeon, Hong Soun Baek, Lee Sang Ik, Im Man Dae, Lee Sang
Chun, and Kim Bum Qyu, Intervening Plaintiffs,
v.
M/V GREEN STAR, her engines, boilers, tackle appurtenances,
cargo, etc., In Rem, and Kukje Shipping Company,
Ltd., In Personam. (Two Cases)
GREAT OCEAN SUPPLY CO., INC.
v.
M/V GREEN STAR, her engines, boilers, tackle, etc., In Rem,
and Kukje Shipping Company Limited, In Personam. (Two Cases)
Appeal of BANK OF PUSAN, Plaintiff in Intervention, in No. 86-5685.
Appeal of NISSHO IWAI AMERICAN CORPORATION in No. 86-5712.
 Nos. 86-5685 and 86-5712.
 United States Court of Appeals,
Third Circuit.
 Argued March 5, 1987.
Decided April 3, 1987.
Rehearing and Rehearing In Banc Denied in No. 86-5685 May 4
and No. 86-5712 May 6, 1987.
 
 Martin B. Mulroy (argued), Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, Newark, N.J., for Bank of Pusan.
 William P. Byrne (argued), Cichanowicz, Callan & Keane, New York City, for Nissho Iwai American Corp.
 Andrew J. Goldstein, Allyn Z. Lite, Hope M. Pomerantz (argued), Goldstein, Till & Lite, Newark, N.J., for Kingstate Oil, et al.
 Keith L. Flicker (argued), Quinn, Coti, Flicker & Llorca, Fort Lee, N.J., Mark C. Flavin, Geoffrey D. Ferrer, Haight, Gardner, Poor & Havens, on the brief, New York City, for Korean Development Bank.
 Sidney H. Kalban, Phillips & Cappiello, P.C., New York City, for Jung Jin Park, et al. and Kim Hyun Jin, et al.
 Richard K. Willard, Asst. Atty. Gen., Thomas W. Greelish, U.S. Atty., Janis G. Schulmeisters, Attorney in Charge (Marie Louise Hagen, of counsel), U.S. Dept. of Justice, Civ. Div., Torts Branch, New York City, for U.S., amicus curiae.
 Before GIBBONS, Chief Judge, SEITZ and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This appeal from a district court's order confirming the judicial sale of a cargo ship requires us to decide if the costs of unloading the vessel after the sale should be treated as administrative costs. The vessel's charterer and the consignee of the cargo contend that the court abused its discretion in refusing to treat unloading expenses as administrative expenses. A preliminary question is whether we have jurisdiction to entertain this appeal. We hold that we do have jurisdiction and conclude that the district court did not abuse its discretion.
 
 I.
 
 2
 On July 29, 1986, the cargo ship M/V GREEN STAR was arrested in Port Newark, New Jersey on behalf of Kingstate Oil, which had in rem claims against the ship and in personam claims against Kuk Je Shipping, her owner. At the time of the arrest, the GREEN STAR was under charter to appellant Nissho Iwai American Corporation, and scrap metal bound for Korea was being loaded on board. Nissho Iwai completed loading after the arrest, apparently in response to assurances from Kuk Je, and issued a bill of lading for the cargo to appellant Bank of Pusan.
 
 
 3
 On August 13, 1986, the district court ordered the interlocutory sale of the GREEN STAR, the proceeds to be deposited with the court to satisfy claims against the vessel or her owner. Bank of Pusan filed an application to have the costs of unloading the scrap, estimated to be about $250,000, treated as an administrative expense charged against the proceeds of the sale. The GREEN STAR was sold at auction with the cargo on board on August 28, 1986 for $540,000. In the course of proceedings to confirm the sale, the district court granted motions to intervene by Nissho Iwai, Bank of Pusan, Kingstate Oil and other creditors (appellees), the GREEN STAR's crew (appellees Park, et al.), and its mortgagee (appellee Korean Development Bank). The district court also denied Bank of Pusan's application for administrative expenses. Bank of Pusan and Nissho Iwai appeal from the denial of the application for administrative expenses.
 
 II.
 
 4
 Appellants contend that jurisdiction on appeal is proper pursuant to 28 U.S.C. Sec. 1292(a)(3). That section vests courts of appeals with jurisdiction of appeals from "[i]nterlocutory decrees of ... district courts ... determining the rights and liabilities of the parties to admiralty cases...." 28 U.S.C. Sec. 1292(a)(3). Appellants concede that the district court did not determine the merits of their claims against Kuk Je Shipping or the GREEN STAR.[1] Br. for appellant Bank of Pusan at 8, 14. They maintain, however, that "as a practical matter" the court's denial of the application to treat the expenses of unloading the steel as an administrative cost constitutes "a very real and final determination" of their rights to a share of the proceeds from the sale of the GREEN STAR sufficient for interlocutory appeal under section 1292(a)(3). Br. for appellant Bank of Pusan at 14. They say that the financial realities of this experience support their contention of finality: the sale realized only $540,000; the cost of unloading amounted to some $250,000; and, although theoretically they have a right to have their claims ultimately processed in due course, unless they succeed in declaring the unloading costs as an administrative expense, their claims will be worthless because of the priority of liens of the mortgagee and the ship's crew. Accordingly, they argue, under the peculiar facts of this case, the determination of the administrative expense question is in reality a final determination of the merits of their claims, and hence is appealable. We are impressed by this appealability argument.
 
 A.
 
 5
 To be appealable under section 1292(a)(3), an order in admiralty need not determine all rights and liabilities of all parties. Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 945 n. 1 (3d Cir.1985); see, e.g., Jones & Laughlin Steel, Inc. v. Mon River Towing, Inc., 772 F.2d 62, 64 n. 1 (3d Cir.1985) (where plaintiff brought suit against two defendants, dismissal of suit against one was appealable under section 1292(a)(3)). Case law indicates, however, that the order appealed from must conclusively determine the merits of a claim or defense. See Todd Shipyards Corp. v. Auto Transportation, S.A., 763 F.2d 745, 751 (5th Cir.1985) (order appealable under section 1292(a)(3) where it determined rights and liabilities of the parties and calculated recoverable damages except for attorney's fees and costs); Bankers Trust Co., 761 F.2d at 945 n. 1 (order appealable under section 1292(a)(3) where it denied motion to vacate earlier order entering judgment in favor of claimants and assessing damages, interest, etc.); Gulf Towing Co. v. Steam Tanker, Amoco New York, 648 F.2d 242, 244 (5th Cir.1981) (order appealable under section 1292(a)(3) where it entered final judgment on plaintiff's claims but not on defendants' cross-claims).
 
 
 6
 Older cases from this court are more explicit. In In Re Bave, 314 F.2d 335, 336 (3d Cir.1963), for example, we said that we lacked jurisdiction of an appeal from the district court's denial of a motion to discontinue a limitation proceeding because "[n]either the merits of the petition nor of appellant's defenses has been determined by the Order from which th[e] appeal is taken." See also Cummings v. Redeeriaktieb Transatlantic, 242 F.2d 275, 276 (3d Cir.1957); United States v. The Lake George, 224 F.2d 117, 119 (3d Cir.1955).
 
 B.
 
 7
 As noted above, appellants concede that the district court did not adjudicate the precise merits of the underlying claim. Bank of Pusan, for example, states that it will pursue its damages claims against the GREEN STAR and Kuk Je Shipping in the pending district court proceedings, and "will seek its place in line" along with the other claimants. Br. for appellant Bank of Pusan at 14. But here we must pierce theory and look at reality. For although, in the abstract, appellants may still assert their claims, their nether position on the creditors' totem pole converts this assertion into a fruitless gesture.
 
 
 8
 Claims of at least two other intervenors--the mortgagee, Korean Development Bank, and the GREEN STAR's crew, Park, et al.--have priority over those of these appellants. See 46 U.S.C. Sec. 953; see also European-American Banking Corp. v. M/S Kosario, 486 F.Supp. 245, 256 (S.D.Miss.1978) (contract liens are subordinate to a preferred mortgage); Kopac Int'l, Inc. v. M/V Bold Venture, 638 F.Supp. 87, 88 (W.D.Wash.1986) (crew members' wage claims have priority over contract claims). It is undisputed that the mortgagee's and crew's preferred liens far exceed the proceeds from the sale of the vessel. See app. of Bank of Pusan at 37-38; br. for appellant Bank of Pusan at 14.
 
 
 9
 It thus comes down to this: appellants' only meaningful avenue for relief is against the fund for reimbursement of the costs of unloading the scrap steel; these claims are viable only if the unloading costs are deemed to be administrative expenses payable ahead of the mortgage and maritime liens. See 46 U.S.C. Sec. 953(b); see also General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration, 668 F.2d 811, 815 (5th Cir.1982); Moore v. United States, 302 F.2d 918, 921 (D.C.Cir.1962). By the district court's administrative costs decision adverse to appellants, their claims have been conclusively determined. For appellants, later review of a final order fixing the priority of claimants vis-a-vis the fund "would be an empty rite." Cf. Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A., 339 U.S. 684, 689, 70 S.Ct. 861, 865, 94 L.Ed. 1206 (1950).
 
 
 10
 In denying Bank of Pusan's application for administrative expenses, the district court effectively determined appellants' rights to a portion of the sale proceeds. See The Panaghia Kathariotisa, 165 F.2d 430, 431 (3d Cir.1948) (per curiam). Accordingly, under the peculiar circumstances of this case we decide that we have jurisdiction on appeal pursuant to 28 U.S.C. Sec. 1292(a)(3). See Bassis v. Universal Line, S.A., 484 F.2d 1065, 1066 (2d Cir.1973). We now turn to the merits.
 
 III.
 
 11
 Relevant case law is well established. A person furnishing goods or services to a vessel after its arrest (in custodia legis ) does not acquire a maritime lien against the vessel for the value of those goods or services. A district court sitting in admiralty, however, has inherent equitable power to give priority to claims arising out of the administration of property within its jurisdiction where "equity and good conscience" so require. New York Dock Co. v. Steamship Poznan, 274 U.S. 117, 122, 47 S.Ct. 482, 484, 71 L.Ed. 955 (1927). See General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration, 668 F.2d 811, 815 (5th Cir.1982); Payne v. S.S. Tropic Breeze, 423 F.2d 236, 239 (1st Cir.), cert. denied, 400 U.S. 964, 91 S.Ct. 363, 27 L.Ed.2d 383 (1970); Morgan Guar. Trust Co. v. Hellenic Lines, Ltd., 593 F.Supp. 1004, 1010 (S.D.N.Y.1984). The exercise of the district court's equitable power is reviewed only for abuse of discretion. Cf. Lacks v. Fahmi, 623 F.2d 254, 256 (2d Cir.1980) (when fashioning equitable relief, a court acts with broad discretion). The district court's decision whether to allow the application for administrative expenses will therefore be disturbed only if the "judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria or procedures are used." Evans v. Buchanan, 555 F.2d 373, 378 (3d Cir.), cert. denied, 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977).
 
 IV.
 
 12
 The issue here is controlled by the Supreme Court's decision in New York Dock Co. v. Steamship Poznan and its progeny holding that if the expenditure inures to the benefit of all claimants, it can be legitimately claimed as an administrative expense; if the expenditure does not so inure to the benefit of all, it is not elevated to this preferred category. In The Poznan, a wharf owner sought preferential payments from the proceeds of the judicial sale of a vessel to which he had furnished wharfage while it was in the custody of a United States marshal. The Court held that the wharf owner was entitled to a preferential payment ahead of all other claimants because
 
 
 13
 [s]ervice rendered to the ship after arrest, in aid of the discharge of cargo, and afterward pending the sale, necessarily inured to [all claimants'] benefit, for it contributed to the creation of the fund now available to them. The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an "expense of justice."
 
 
 14
 The Poznan, 274 U.S. at 120-21, 47 S.Ct. at 484 (citation omitted). This rule is now well established. See, e.g., General Elec. Credit & Leasing Corp., 668 F.2d at 815-16; The Tropic Breeze, 423 F.2d at 239-40; Turner & Blanchard, Inc. v. Steamship Emilia, 322 F.2d 249, 250 (2d Cir.), cert. denied, 375 U.S. 880, 84 S.Ct. 150, 11 L.Ed.2d 111 (1963); Moore v. United States, 302 F.2d 918, 921 (D.C.Cir.1962); see also 2 Benedict on Admiralty Sec. 46, at 3-68 (7th ed. 1983). Cf. 46 U.S.C. Sec. 953(b).
 
 
 15
 The district court concluded that the cost of unloading the GREEN STAR's cargo after its arrest was not an "expense of justice" under the rule of The Poznan. We think that this ruling was correct. Nothing in the record indicates that the post-arrest off-loading was undertaken "upon the authority of the court or its officer."[2] The Poznan, 274 U.S. at 121, 47 S.Ct. at 484. More important, appellants have failed to demonstrate that the removal of the GREEN STAR's cargo after the judicial sale was "for the common benefit of those interested in [the] fund." Id.
 
 
 16
 It is clear that the unloading was undertaken for the sole benefit of the two appellants here--Nissho Iwai, seller of the steel and charterer of the vessel, and Bank of Pusan, consignee of the bill of lading for the cargo. Appellants do not contend that other claimants were benefitted by the post-sale removal of their cargo. Instead, appellants argue that the presence of the scrap metal on board the GREEN STAR enhanced the value of the res at the time of the sale and benefitted all claimants. Br. for appellant Nissho Iwai at 7; br. for appellant Bank of Pusan at 25. This argument is irrelevant. Even if the presence of the cargo brought a higher price for the GREEN STAR at the judicial sale, here appellants seek reimbursement for costs of unloading the steel after the sale; they do not seek costs of loading the steel prior to the sale. Under similar circumstances, courts have refused to treat costs of unloading cargo as administrative expenses entitled to preferential payment. See Pouch Terminal, Inc. v. M/V Atra, 1982 A.M.C. 2268, 2271-72 (S.D.N.Y.1982); Kleinwort Benson, Ltd. v. Sherkate Sahami Sakht (THE MYRTO), [1984] 2 Lloyd's Rep. 341 (Q.B. (Adm.Ct.) (1984)). See also Scoulikarakis v. M/T Oilbird, 1978 A.M.C. 706, 708-13 (S.D.N.Y.1977) (wages of crew members not treated as administrative expense where vessel sold for scrap because crew's maintenance did not benefit claimants).
 
 
 17
 Cases relied on by appellants in support of their position are easily distinguished. As we said before, in The Poznan, wharfage furnished a vessel prior to its judicial sale was treated as an administrative expense because it was a necessary cost of maintaining the res in the court's custody, and thus benefitted all who had claims against it. The Poznan, 274 U.S. at 120-22, 47 S.Ct. at 484. Moreover, the court had approved or knowingly permitted the wharfage services to be furnished the ship while in its custody. Id. at 122-23, 47 S.Ct. at 484-85. In The Emilia, the Second Circuit affirmed the district court's preferential payment of the costs of off-loading a vessel as an administrative expense under the rule of The Poznan. The Emilia, 322 F.2d at 250. But there, the district court had ordered the vessel's cargo to be off-loaded prior to the judicial sale because it found "that the presence of cargo aboard ha[d] an adverse effect on the sale to the detriment of all parties who have an interest, claim or lien in the vessel." Turner & Blanchard, Inc. v. A.H. Bull Steamship Co., 1963 A.M.C. 1448, 1449 (E.D.N.Y.1963). Similarly, in Morgan Guar. Trust Co. v. Hellenic Lines, Ltd., 593 F.Supp. 1004 (S.D.N.Y.1984), the court ordered preferential payment of costs of unloading and maintaining certain vessels in its custody. Again, these services were furnished to the vessels prior to judicial sale, and the court found that they were necessary to "maximize the possibility of a sale at a good price," thus benefitting all claimants. Id. at 1010.
 
 
 18
 No such findings were made in the case before us; indeed, appellants maintain that the presence of cargo onboard the GREEN STAR enhanced, rather than diminished, its value at sale. Br. for appellant Nissho Iwai at 7; br. for appellant Bank of Pusan at 25.
 
 
 19
 Finally, appellants contend that the district court erred in relying on Pouch Terminal, Inc. v. M/V Atra, 1982 A.M.C. 2270 (S.D.N.Y.1982), where the charterer of an arrested vessel insisted that its cargo be discharged before a judicial sale. As a result of delays and damages to the vessel caused by unloading the cargo, the market value of the ship declined. Relying on the Emilia case, the charterer nevertheless applied for reimbursement of the discharge costs as administrative expenses. The court denied the application, stating that:
 
 
 20
 [t]he Emilia case is clearly distinguishable from the case at bar. The cargo aboard the Atra consisted of scrap steel and, in fact, the principal interest in the vessel itself was its scrap value. All the interested parties, except [the charterer], were willing to have the vessel sold with the cargo on board. Significantly, unlike the Emilia case, there was no auction held which resulted in no bids due to the presence of cargo on board. In Emilia, "the presence of cargo aboard [had] an adverse effect on the sale to the detriment of all parties who have an interest, claim or lien in the vessel." ... These are definitely not the circumstances here.
 
 
 21
 [The charterer] is not permitted to spread its discharge costs over all parties where only it, if anyone, received benefit from the discharge.
 
 
 22
 Id. at 2272 (citations omitted). Appellants argue that the district court erred in relying on Pouch Terminal because, unlike the charterer in that case, appellants' actions did not cause a decline in the vessel's value. This argument does not persuade us. The requisite circumstance for granting an application for reimbursement of administrative expenses was missing in both Pouch Terminal and the case before us: the services furnished the vessels did not contribute to the value of the res and thereby benefit all claimants. The district court, therefore, did not err in relying on Pouch Terminal in support of its decision to deny preferential payments to appellants.
 
 V.
 
 23
 We conclude that the district court did not abuse its discretion in denying appellant's application for administrative expenses. Accordingly, the order of the district court will be affirmed.
 
 
 
 [1]
 Nissho Iwai, for example, has asserted claims against Kuk Je Shipping and the GREEN STAR for breach of contract, negligence and misrepresentation. See app. of appellant Bank of Pusan at 88-92
 
 
 [2]
 Although it is preferable to obtain the court's authorization before incurring expenses, this is not required. See General Elec. Credit & Leasing Corp., 668 F.2d at 815; Morgan Guar. Trust Co., 593 F.Supp. at 1010. However, "those furnishing custodial services to a ship in custodia legis 'are gambling on a wholly unpredictable result unless they take the precaution of having their services authorized in advance by an order of the custodial court.' " Bassis v. Universal Line, S.A., 484 F.2d 1065, 1068 (2d Cir.1973) (citations omitted))