

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2004

# Petroleos Mexicanos v. MT King A

Precedential or Non-Precedential: Precedential

Docket No. 03-2541

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Petroleos Mexicanos v. MT King A" (2004). *2004 Decisions.* Paper 426.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/426

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-2541
_____

PETROLEOS MEXICANOS
REFINACION,

v.

M/T KING A (EX-TBILISI), her
engines, boilers, etc.,
in rem by KING DAVID SHIPPING
CO., LTD.

*Appellant*
_____

On Appeal from the United States
District Court for
The District of New Jersey
(D.C. No. 02-cv-01215)
District Judge: Honorable Dennis M.
Cavanaugh
_____

Argued June 15, 2004

Before: ALITO, SMITH and BECKER,
*Circuit Judges*
(Filed: July 29, 2004)

JEREMY J.O. HARWOOD, ESQ.
(ARGUED)
Healy & Baillie
61 Broadway
New York, NY 10006

*Attorney for Appellant*

TERRY L. STOLTZ, ESQ. (ARGUED)
Nicoletti, Hornig, Campise, Sweeney &
Paige
88 Pine Street
7th Floor
New York, NY 10005

ANDREW J. GOLDSTEIN, ESQ.
Goldstein, Lem & Isaacson
100 Morris Avenue
3rd Floor
Springfield, NJ 07081

*Attorneys for Appellee*

_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge.*

This case presents important questions about the scope of our appellate jurisdiction over the order of a district court sitting in admiralty denying a motion to dismiss a suit and to vacate a warrant of arrest in an *in rem* proceeding. Here, appellee Petroleos Mexicanos Refinacion ("Pemex"), the Mexican state-owned oil company, brought an action *in rem* against the King A, an oil tanker over which it claims to hold a maritime lien. The District Court granted a warrant of arrest for seizure of the *res* (the vessel). King David Shipping Co. Ltd. ("King David") claims ownership of the King A and responded on its behalf, moving under

Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure to dismiss Pemex's suit—and to vacate the warrant of arrest for the King A—on subject matter jurisdiction and statute of limitations grounds. The District Court denied the motion, and King David appeals on behalf of the King A.[1]

We conclude that we lack appellate jurisdiction over the District Court's order under 28 U.S.C. § 1291 or the cognate collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). We similarly conclude that we do not have appellate jurisdiction under the provisions for appellate review of certain interlocutory orders found in 28 U.S.C. § 1292(a)(1) and (3). We therefore do not reach the merits of the appeal, which we will dismiss for lack of appellate jurisdiction.

---

[1]Because this is an *in rem* action, the King A itself is the defendant with King David merely acting on its behalf. "American courts, by and large, adopted a 'personification' theory in which the vessel itself is a party and judgments are entered against her without the necessity of securing jurisdiction over the owner." *Salazar v. Atlantic Sun*, 881 F.2d 73, 76 (3d Cir. 1989). We will dispense with the linguistic formality in the opinion, however, and refer simply to King David's actions, arguments, etc., while recognizing that it appears only on behalf of the King A.

## I. Facts and Procedural History

### A. Background Facts

In late 1992, Pemex chartered a tanker, the Tbilisi (which has since been renamed the King A), from Tbilisi Shipping Co. ("Tbilisi Shipping"). In a voyage in December 1992, a defect in the ship somehow caused the two types of petroleum carried by the ship—diesel and unleaded gasoline—to cross-contaminate. This allegedly tortious event arguably gives rise to a maritime lien on the ship in favor of Pemex. As security for the damages, Pemex also withheld some $530,320 of charter hire that it otherwise owed to Tbilisi Shipping.

Tbilisi Shipping conceded liability (but not the amount of damages). In 1993, however, Tbilisi Shipping commenced an arbitration under the charter to recover the withheld hire. Tbilisi Shipping's P&I club[2] issued a Letter of Undertaking ("LOU") (for our purposes here, a bond) to secure any arbitral award in favor of Pemex (including costs and fees awarded by the arbitration panel). In return, Pemex promised to pay the withheld hire and refrain from arresting the Tbilisi.

As the parties confirmed at oral argument, the arbitration has been

---

[2]"P&I" stands for "Protection and Indemnity." P&I is insurance against third party liabilities and expenses arising from owning ships or operating ships as principals. A P&I club issues such insurance.

protracted for reasons not at all relevant here, and it continues to this day. At some point, the Tbilisi was renamed the King A, and it is now owned by King David. Pemex, wanting additional security for its claim (in case the LOU from Tbilisi Shipping's P&I club proves insufficient to cover any arbitral award) sought to arrest the King A, on the theory that the tortious event created a maritime lien on the ship, irrespective of its owner.

## B. Proceedings Before the District Court

Pemex applied in mid-March 2002 to the United States District Court for the District of New Jersey for, and was granted, a warrant of arrest for the King A, which was scheduled to call at Port Newark.[3] A few days later, King David's P&I club issued a LOU to secure any *in rem* award, so the warrant of arrest was withdrawn and was not actually served on the King A.

In September 2002, King David submitted an application under Fed. R. Civ. P. Supp. Rule E(4)(f), which provides: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

---

[3]This is the normal course to begin an *in rem* admiralty proceeding—a complaint is filed, and a warrant of arrest is issued for the *res*. *See* Fed. R. Civ. P. Supp. Rule C.

The application was in substance a motion to dismiss the complaint, and (as the logical consequence thereof) to vacate the warrant of arrest and discharge King David's P&I club's LOU.

The District Court ruled on three issues in denying the Rule E(4)(f) application. First, it held that Pemex has standing to pursue the *in rem* action, over King David's objection that Pemex had been paid in full for its loss by its insurers, and so had no lien on the ship, and hence no standing to sue. Second, the District Court held that there was a valid maritime lien against the ship, and so the warrant of arrest was proper, over King David's objection that Pemex failed to properly plead the existence of a maritime lien in its complaint. Third, the District Court held that there was no statute of limitations bar to Pemex's claim, over King David's objection that this action was subject to a one-year limitations period that had not been tolled, and had thus long ago expired. Thus, the District Court denied King David's motion to dismiss, and refused to vacate the warrant of arrest for the King A.

## C. This Appeal

King David argues on appeal that the District Court's holdings on subject matter jurisdiction, the existence of a maritime lien, and the statute of limitations were incorrect. Viewing these matters as immaterial here, Pemex moved this Court to dismiss the appeal for lack of appellate jurisdiction. In response, King David moved for a summary remand to the District Court with instructions to dismiss

the complaint. These motions were referred to the merits panel. *See* Third Circuit IOP 10.3.5, 10.6.

## II. Appellate Jurisdiction

A Rule E(4)(f) motion ("Actions in Rem and Quasi in Rem: General Provisions – Procedure for Release From Arrest or Attachment") is similar (at least here) to a motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; in the case of Pemex's alleged lack of standing, it is similar to a motion under Fed. R. Civ. P. 12(b)(1) to dismiss for lack of subject matter jurisdiction. However, in view of its practical effect here, the Rule E(4)(f) motion belongs to the class of motions touching upon interim measures or provisional relief, such as motions to attach property or release an attachment, or motions for temporary restraining orders or preliminary injunctions. As such, in the discussion that follows, we are constrained to look at it both as a motion to dismiss and as an order similar to those touching upon interim measures or provisional relief.

Four possible sources of appellate jurisdiction command our attention: First, the familiar appeal-from-final-judgment provision of 28 U.S.C. § 1291; second, the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which allows appeals under § 1291 from certain collaterally final orders; third, 28 U.S.C. § 1292(a)(3), which expressly allows appeals from certain interlocutory orders of district courts sitting in admiralty; and fourth, 28 U.S.C. § 1292(a)(1), which authorizes interlocutory appeals from orders granting or refusing certain forms of interim or provisional relief. We address each jurisdictional provision in turn.[4]

### A. 28 U.S.C. § 1291

With the exception of the *Cohen* collateral order doctrine, *see infra* Part II.B, an appeal under 28 U.S.C. § 1291 lies only from a "final decision[]." As the Supreme Court has repeatedly emphasized,

---

[4]Relying on the principle that subject matter jurisdiction may be raised at any time, King David has zealously argued that the Court of Appeals has an obligation to consider the jurisdiction of the court whose ruling is under appeal. This is abstractly true, but not the full story, as even the authorities quoted by King David demonstrate. For example: "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, *first, of this court*, and then of the court from which the record comes." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)) (emphasis added). As this quotation aptly demonstrates, the question of this Court's jurisdiction (i.e., our appellate jurisdiction) is *antecedent* to all other questions, including the question of the subject matter jurisdiction of the District Court.

4

"a decision is not final, ordinarily, unless it '"ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."'" *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521-22 (1988) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945))); *see also Gov't of V.I. v. Rivera*, 333 F.3d 143, 150 (3d Cir. 2003) (quoting *Catlin*, 324 U.S. at 233). "The denial of a motion to dismiss does not end the litigation and ordinarily is not a final order for § 1291 purposes." *Bell Atlantic-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 343 (3d Cir. 2001) (citing 15A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3914.6 at 526 ("Orders refusing to dismiss an action almost always are not final.")). The District Court's decision denying King David's motion to dismiss plainly does not meet the *Catlin* finality standard: But for this appeal, litigation on the merits would have continued, and there was no judgment to execute.

Likewise, the status of the warrant of arrest has no bearing on the merits, and while the arrest of the ship (metamorphosed into the LOU) may in the future be used to satisfy a judgment, the arrest itself is not the immediate precursor to execution of a judgment. The Court of Appeals for the Second Circuit has cataloged a "long and distinguished line of authority" that "an order denying a motion to vacate an attachment" is not "a final order within the meaning of 28 U.S.C. § 1291." *Drys Shipping Corp. v. Freights, Sub-Freights, Charter Hire*, 558 F.2d 1050, 1051 (2d Cir. 1977). We agree: 28 U.S.C. § 1291 in its ordinary sense does not confer jurisdiction on this Court in this appeal.

## B. Collateral Order Doctrine

We recently had occasion to discuss the collateral order doctrine in *Gov't of V.I. v. Hodge*, 359 F.3d 312, 319 (3d Cir. 2004):

> This Court's recent definitive treatment of the collateral order doctrine is *In re Ford Motor Co.*, 110 F.3d 954 (3d Cir. 1997). There we explained:

>> The collateral order doctrine, first enunciated by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), provides a narrow exception to the general rule permitting appellate review only of final orders. An appeal of a nonfinal order will lie if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 860 (3d Cir. 1994).

*Id.* at 958. As the *Cohen* Court explained, 28 U.S.C. § 1291 has been given a "practical rather than a technical construction." 337 U.S. at 546. To this end, as a doctrinal matter, orders that meet the three prongs described above are deemed to be "final decisions" within the meaning of the statute.

We need not consider the first or second prongs of the *Cohen* test, for nothing in the District Court's order satisfies the third prong, that the issue be "effectively unreviewable on appeal from a final judgment." In assessing "effective unreviewability" we address individually each of the issues determined by the District Court (standing, existence of a lien, and statute of limitations) as well as its overall refusal to vacate the warrant of arrest.

Standing is a question of subject matter jurisdiction. *E.B. v. Verniero*, 119 F.3d 1077, 1092 n.12 (3d Cir. 1997) (quoting *Page v. Schweiker*, 786 F.2d 150, 153 (3d Cir. 1986)). What the parties here speak of as standing may also, as the District Court recognized, really be a question of compliance with Fed. R. Civ. P. 17(a), which requires that civil actions be brought by the "real parties in interest." Whether Article III, Rule 17(a), or both are at issue, there is no reason to suspect that King David will be unable to obtain effective review of its arguments on appeal from a final judgment. Cases abound where a victorious plaintiff's judgment evaporates on appeal after final judgment when the court of appeals holds that the district court lacked subject matter jurisdiction. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Powell*, 87 F.3d 93 (3d Cir. 1996). Likewise, there are cases (though fewer of them) addressing Rule 17(a) issues on appeal from final judgments in favor of plaintiffs. *See, e.g.*, *Borror v. Sharon Steel Corp.*, 327 F.2d 165 (3d Cir. 1964).

Moreover, we recently reaffirmed the principle that interlocutory orders finding subject matter jurisdiction are ordinarily not appealable under the collateral order doctrine. "'[N]on-immunity based motions to dismiss for want of subject matter jurisdiction are not ordinarily entitled to interlocutory review.'" *Hodge*, 359 F.3d at 321 (quoting *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 268 (2d Cir. 1999) (citing *Catlin*, 324 U.S. at 236)). There is no reason to depart from this general rule in this case. There are countless cases where a district court rejects a defendant's challenge to the plaintiff's standing; in that posture, defendants simply may not seek immediate review in the court of appeals.

The statute of limitations and maritime lien validity issues are likewise reviewable on appeal after final judgment. *See, e.g.*, *Bell Atlantic-Pa.*, 273 F.3d at 345 ("The statute of limitations defense fails the third prong of the *Cohen* standard because it is not effectively unreviewable on appeal from final judgment."); *Bermuda Express, N.V. v. M/V Litsa (Ex. Laurie U)*, 872 F.2d 554 (3d Cir. 1989) (reviewing validity of maritime lien on appeal from final judgment in favor of lienor stevedores). Should Pemex ultimately prevail before

the District Court, King David may take precisely the course charted by the defendants in the cases we cite.

The legal issues considered above (jurisdiction, maritime lien, and statute of limitations) have no immediate effect (aside from continuing the litigation). The refusal to vacate the warrant of arrest is different to the extent that it has the immediate effect of compelling King David to maintain its P&I club's LOU. We have not had occasion to consider whether this is a distinction with a difference. The Court of Appeals for the Fifth Circuit has held that it is not. *See Astarte Shipping Co. v. Allied Steel & Export Service*, 767 F.2d 86, 88 (5th Cir. 1985); *Constructora Subacuatica Diavaz, S.A. v. M/V Hiryu*, 718 F.2d 690, 692 (5th Cir. 1983); *accord Seguros Banvenez S.A. v. S/S Oliver Drescher*, 715 F.2d 54, 57 (2d Cir. 1983) (Mansfield, J., concurring).

The logic of all these cases is that the refusal to vacate a warrant of arrest is not effectively unreviewable after final judgment. If King David should prevail, it could seek compensation for the expense of maintaining the LOU during the pendency of the litigation. This is in stark contrast to the case where a warrant of arrest *is* vacated and the *plaintiff* appeals; there, with the *res* unattached, and literally sailing away, the plaintiff would be unable to execute on a judgment if it were ultimately victorious on the merits. The Fifth Circuit put the contrast well:

> The Supreme Court has held that an order vacating an

attachment has *Cohen*-type finality. *Swift & Co. Packers v. Compania Colombiana del Caribe*, 339 U.S. 684 (1950). Appellate review of such an order at a later date "would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." 339 U.S. at 689.

> "The situation is quite different where an attachment is upheld pending determination of the principal claim," the Court said in *Swift & Company Packers*, citing *Cushing v. Laird*, 107 U.S. 69 (1883). "In such a situation the rights of all the parties can be adequately protected while the litigation on the main claim proceeds." 339 U.S. at 689. Although dictum, the Court's statement is persuasive, illustrating as it does the rationale underlying the application of *Cohen*.

*Constructora Subacuatica Diavaz*, 718 F.2d at 692.

We are in complete agreement, and our long-established precedent from an analogous area—nonmaritime prejudgment attachments—confirms our view. In *United States v. Estate of Pearce*, 498 F.2d 847 (3d Cir. 1974) (*en banc*), we held that we were without jurisdiction to review an order denying a motion to quash a sequestration order under Delaware law. We observed that sequestration under Delaware law is an equitable device "analogous to foreign attachment at law,"

*id.* at 849 (citing Delaware cases), and noted that "[o]rders granting or denying attachment are ordinarily interlocutory and non-appealable," *id.* (citing 9 *Moore's Federal Practice* ¶ 110.13[5]). Then, citing *Swift & Co. Packers*, we concluded that, while an order denying or dissolving an attachment may be appealable under the collateral order doctrine, orders upholding attachments are not, and we therefore dismissed the appeal. *See id.* at 849-50. At least with respect to the collateral order doctrine, we see no meaningful distinction between the order appealed from in *Pearce's Estate* and the order appealed from here. Thus we conclude that *Cohen* provides no basis for immediately appealing the denial of a motion to vacate a warrant of arrest.

### C. 28 U.S.C. § 1292(a)(3)

We next consider whether the District Court's order is appealable under the admiralty-specific provision of 28 U.S.C. § 1292(a)(3), which confers jurisdiction on the courts of appeals over appeals from "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." We have focused on the "rights and liabilities" language to limit the scope of appealable interlocutory orders. In *In re Complaint of PMD Enterprises, Inc.*, 301 F.3d 147, 149-50 (3d Cir. 2002), we recounted some cases where we have found § 1292(a)(3) to apply:

Our case law on interlocutory appeals in admiralty establishes that the language of § 1292(a)(3) regarding a final determination of rights and liabilities applies to situations such as the dismissal of parties from the litigation, grants of summary judgment (even if not to all parties), and other cases where a claim has somehow been terminated. "[T]he order appealed from must conclusively determine the merits of a claim or defense." *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 921 (3d Cir. 1987). For example, in *Jones & Laughlin Steel, Inc. v. Mon River Towing, Inc.*, 772 F.2d 62, 64 & n.1 (3d Cir. 1985), we allowed an interlocutory appeal in admiralty after one of the defendants was dismissed from the action for lack of subject matter jurisdiction. In [*In re Complaint of*] *Nautilus Motor* [*Tanker Co.*], 85 F.3d [105,] 109-10 [(3d Cir. 1996)], we granted an appeal following the grant of judgment for the counterclaim, even though the principal claim had not been conclusively decided. As we have previously stated, interlocutory appeals in admiralty apply "to any order which finally determines the liability of *a* party even if the order leaves unresolved an issue which may ultimately preclude recovery by a particular plaintiff." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 945 n.1 (3d Cir. 1985) (emphasis in original).

8

A prototypical application of § 1292(a)(3) is the appeal of a ruling on liability prior to a trial on damages. *See, e.g.*, *United States v. The Lake George*, 224 F.2d 117, 118-19 (3d Cir. 1955) ("[T]he statute permits an appeal in avoidance of the expense and delay of finding damages which may not be recovered. It is settled, however, that the statute does not cover all interlocutory orders, but only such as 'determine the rights and liabilities of the parties', and it was not intended to allow repeated appeals." (citations omitted)).

Therefore, the question in this case is whether any of Pemex's or the defendant's "rights" or "liabilities" have been finally decided. They have not: The District Court's ruling on standing resolves the question in favor of finding jurisdiction, which is the archetypal ruling *not* about rights or liabilities. Finding the existence of a maritime lien is a step on the road to finding liability, but it is only a step, and we do not understand King David to have conceded that the King A is liable to Pemex.

The ruling on the statute of limitations likewise does not have the effect of finally determining whether one party is liable to another. The District Court does appear to have conclusively ruled that the statute of limitations defense is unavailable in this case, but that is not the end of the case, and it is not, at all events, the sort of "conclusive[] determin[ation of] the merits of a . . . defense" spoken of in *Kingstate Oil v. M/V Green Star*, 815 F.2d 918, 921 (3d Cir. 1987). Rather, this language

refers to the conclusive determination *in favor of the defendant* of a defense, such that the plaintiff will not succeed on its claim, and may take an immediate appeal. Symmetrically, a defendant may immediately appeal the conclusive determination in favor of the plaintiff of a claim. To use the language from *PMD Enterprises*, § 1292(a)(3) authorizes appeals only when "a claim has somehow been *terminated*." 301 F.3d at 149 (emphasis added). Section 1292(a)(3) may allow more interlocutory appeals than are generally permitted in civil litigation, but it does not permit litigants to parade piecemeal appeals before the court of appeals. If we had jurisdiction under § 1292(a)(3) to consider a District Court's rejection of a statute of limitations defense, we could think of few orders that would not be subject to immediate appeal.

The District Court's refusal to vacate the warrant of arrest again presents a slightly different question. We have not previously held whether interlocutory orders denying motions to vacate maritime attachments (i.e., warrants of arrest) are appealable under § 1292(a)(3). It seems clear that they are not, for whether or not a vessel is subject to arrest says nothing about the "rights and liabilities" of the parties; it is merely a procedural matter. *See Astarte Shipping*, 767 F.2d at 88. In sum, 28 U.S.C. § 1292(a)(3) is of no aid to the appellants.

### D. 28 U.S.C. § 1292(a)(1)

The final possible source of appellate jurisdiction is the statute authorizing

review in the courts of appeals of orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1).[5] This subsection plainly does not apply to the District Court's decisions on jurisdiction, the maritime lien, or the statute of limitations; the only question is whether the refusal to vacate a warrant of arrest is, for purposes of § 1292(a)(1), the refusal to dissolve an injunction. We hold that it is not. The warrant of arrest is not, like an injunction, a form of substantive relief; rather, it is a component of the conduct of the litigation in an admiralty proceeding *in rem. See supra* note 3. "An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988) (holding that a district court's refusal to abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), was not appealable under 28 U.S.C. § 1292(a)(1)). We therefore conclude that the District Court's order in this case is not appealable under § 1292(a)(1).

### III. Conclusion

For the foregoing reasons, we lack appellate jurisdiction in this case. That said, we of course express no view on the merits of the decision that King David appeals, and this opinion is without prejudice to King David's right to take an appeal from an appropriate final order or appealable interlocutory order presenting the same issues it now appeals.

The appeal will be dismissed.

---

[5]There is nothing in § 1292(a) or elsewhere to indicate that subsection (3) is the exclusive provision for interlocutory review of orders in admiralty, and we see no logical reason that subsection (1) is not also available. *See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 564 (5th Cir. 1981); *see also R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 286 F.3d 194 (4th Cir. 2002) (finding jurisdiction under 28 U.S.C. § 1292(a)(1) over an interlocutory appeal from district court sitting in admiralty).